UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEIA D. B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00949-MKK-JRS |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Geia D. B.[2] requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her

application for Title II Disability Insurance Benefits ("DIB") and Title XVI

Supplemental Security Income ("SSI") under the Social Security Act. *See* 42 U.S.C.

§§ 405(g), 423(d), 1383(c)(3). For the reasons set forth below, the Court hereby

**AFFIRMS** the Administrative Law Judge's ("ALJ's") decision denying Plaintiff's

application for benefits.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

[2] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The undersigned has elected to implement that practice in this Order, in both the Order's body and the Order's caption.

## I.    Procedural History

Plaintiff filed her application for benefits on May 17, 2021, alleging she was disabled as of April 30, 2018. (Dkt. 12-5 at 2, R. 202). Her application was denied initially on January 5, 2022, (Dkt. 12-3 at 2, R. 74), and on reconsideration on March 15, 2022, (*id.* at 18, R.  90). Plaintiff then requested a hearing, which occurred before ALJ Teresa Kroenecke on September 20, 2022. (Dkt. 12-2 at 38, R. 37). At the hearing, Plaintiff was represented by counsel and testified, as did Vocational Expert ("VE") Carrie Anderson. (*Id.* at 38, R. 37). In a written decision, the ALJ concluded Plaintiff was not disabled. (*Id.* at 11, R. 10).  The ALJ's decision was upheld by the appeals council at the Social Security Administration. (*Id.* at 1, R. 1). Plaintiff then filed for judicial review. 42 U.S.C. § 405(g).

## II.   Legal Standard

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then [s]he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 416.920. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v.*

---

[3] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to SSI benefits. Often, the parallel section pertaining to the other type of benefits—disability insurance benefits ("DIB")—is verbatim and makes no substantive legal distinction based on the benefit type. *See* 20 C.F.R. § 404.1520(a). Because the statutory references for SSI and DIB claims are substantially similar, the undersigned may reference them interchangeably throughout this opinion.

*Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and RFC to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(g).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence and free of legal error. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand

a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Plaintiff is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (*citing Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000); *see also Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'") (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.   Background

### A.   Factual Background

Plaintiff was 31 years old as of the alleged onset date. (Dkt. 12-5 at 2, R. 202). She has a high-school education and past work experience as a certified nursing assistant, dialysis technician, patient care technician, and caregiver. (Dkt. 12-6 at 16, R. 242).

### B.   Previous Applications

Plaintiff previously applied for benefits in March of 2019, resulting in a denial of benefits by an ALJ on October 23, 2020. (Dkt. 12-2 at 11, R. 10). Because the current application identified Plaintiff's alleged onset date as April 30, 2018, the ALJ treated the application as a request to re-open the previous ALJ's decision for the time period before October 23, 2020. (*Id*.). Here, the ALJ did not find a sufficient basis to reopen the previous determination, and so only covered the period between October 23, 2020, to present in the decision under review. (*Id*.).

C.    ALJ Decision

In determining whether Plaintiff qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (Dkt. 12-2 at 12-25, R. 11-24). At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 24, 2020. (*Id.* at 14, R. 13).

At Step Two, the ALJ found the following severe impairments: cervical and lumbar degenerative disc disease, left shoulder degenerative joint disease, history of bilateral carpal tunnel syndrome and cubital tunnel syndrome, status-post surgeries, and obesity. (*Id.*). The ALJ also found the non-severe impairments of depression and anxiety. (*Id.* at 15, R. 14). As to the "paragraph B" criteria, the ALJ concluded that Plaintiff had mild limitations in the functional areas of concentrating, persisting or maintaining pace, and adapting or managing oneself. (*Id.* at 16, R. 15). The ALJ found no limitations in Plaintiff's ability to interact with others or understand, remember, or apply information. (*Id.*).

The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 17, R. 16). She evaluated Plaintiff for: Listing 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Neve Root(s)); Listing 1.16 (Lumbar Spinal Stenosis Resulting in Compromise of the Cauda Equina); Listing 1.18 (Abnormality of a Major Joint(s) in Any Extremity); and Listing 11.14 (Peripheral Neuropathy). (*Id.* at 17-19, R. 16-18). For each listing, the ALJ concluded Plaintiff's impairment

did not meet or equal the listing requirements. (*Id.*). To evaluate the impairment of obesity, which has no listing, the ALJ considered whether Plaintiff's obesity, alone or in combination with other impairments, meant Plaintiff met or equaled a "condition of [l]isting level severity" and concluded it did not. (*Id.* at 19, R. 18).

At Step Three, but before Step Four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a) except:

> she can occasionally stoop, kneel, crouch, and climb ramps and stairs; never crawl and climb ladders, ropes, and scaffolds; frequently handle, or gross manipulation, and finger, or fine manipulation with bilateral upper extremities; occasionally reach overhead with bilateral upper extremities; and never be exposed to vibrations or hazards such as unprotected heights or dangerous machinery.

(Dkt. 12-2 at 20, R. 19).

At Step Four, the ALJ found the Plaintiff was unable to perform her past relevant work. (*Id.* at 24, R. 23). At Step Five, relying on the VE's testimony, and considering Plaintiff's age, education, work experience and RFC, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy. (*Id.*). The ALJ thus concluded that Plaintiff was not disabled. (*Id.* at 24-25, R. 23-24).

## IV.   Discussion

Plaintiff challenges two parts of the ALJ's decision. First, Plaintiff attacks the RFC, claiming it is unsupported by substantial evidence and runs afoul of Social

Security Ruling ("SSR") 96-8P. (Dkt. 14 at 2, 9-18).[4] Second, Plaintiff argues the ALJ improperly rejected Plaintiff's testimony about her symptoms and limitations in violation of SSR 16-3p. (*Id.* at 2, 18-24). The Commissioner responds that the ALJ provided ample support for both the RFC and the subjective symptom analysis. (Dkt. 20 at 6-15).

### A.     RFC and SSR 96-8P

Plaintiff takes issue with several aspects of the ALJ's RFC determination. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563 (citing SSR 96-8p); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."). That is how an ALJ determines "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2; *see also* 20 C.F.R. §§ 416.945(a), 404.1545(a). In arguing that the ALJ failed to properly evaluate the record when drafting the RFC, Plaintiff presents three different alleged errors. The Court will address each of these in turn.

---

[4] The page numbers provided at the bottom of Plaintiff's opening brief do not correspond with the paginated numbers in the header that is automatically generated during docketing. Throughout the Order, the undersigned will cite to the page numbers as they appear in the header of the document.

### 1.   Medical Evidence

First, Plaintiff argues the ALJ improperly disregarded medical opinions and failed to identify that evidence that supported the RFC limitations. (Dkt. 14 at 11-14). According to Plaintiff, the ALJ "guess[ed]" at what Plaintiff's limits were, rather than "submit[ing] the record to medical scrutiny." (*Id*. at 12). The Court disagrees.

Here, as noted previously, the ALJ concluded that Plaintiff could perform sedentary work with the following functional limitations: "she can occasionally stoop, kneel, crouch, and climb ramps and stairs; never crawl and climb ladders, ropes, and scaffolds; frequently handle, or gross manipulation, and finger, or fine manipulation with bilateral upper extremities; occasionally reach overhead with bilateral upper extremities; and never be exposed to vibrations or hazards such as unprotected heights or dangerous machinery." (Dkt. 12-2 at 20, R. 19). In attacking the ALJ's review of the medical opinions, Plaintiff specifically challenges two aspects of the RFC: those related to hand dexterity and prolonged sitting.

In addition to the medical records and Plaintiff's testimony, the ALJ reviewed four physician opinions when formulating Plaintiff's functional limitations. Dr. Kurtz, one of Plaintiff's treating orthopedists, "did not indicate what activities [Plaintiff] can or cannot perform," (*id*. at 23, R. 22), but recommended Plaintiff "continue normal activities," avoid bedrest, and engage in exercise, (Dkt. 12-7 at 114, R. 411). The ALJ found this opinion partially persuasive. (Dkt. 12-2 at 23, R. 22). The ALJ also considered the opinions of Dr. Corcoran, offered on December 7,

2021, and Dr. Sands, offered on March 10, 2022. (*Id.*). Both state agency medical consultants opined Plaintiff could carry up to fifty pounds, stand, stand or walk for six hours per eight-hour workday, and sit for six hours in an eight-hour workday. (*Id.*). The ALJ found these opinions non-persuasive because "updated evidence" indicated Plaintiff was restricted to sedentary activity. (*Id.*). The updated evidence to which the ALJ was referring was the opinion of Dr. Sieber, offered on April 12, 2022, which was the last medical opinion considered by the ALJ. (*Id.*). Dr. Sieber imposed a ten-pound lifting restriction, but otherwise cleared Plaintiff to return to work. (Dkt. 12-8 at 33, R. 493). The ALJ found this opinion persuasive. (Dkt. 12-2 at 23, R. 22).

Reading the ALJ's decision as a whole, the Court concludes the ALJ's conclusions regarding Plaintiff's hand use and ability to sit were supported by substantial evidence. *See Diaz,* 55 F.3d 306 (court reviews AJL's decision for support by substantial evidence—no more than "a reasonable mind might accept as adequate to support a conclusion") (internal quotations and citations omitted). Plaintiff's assertions that the ALJ improperly played doctor or used her "lay intuition regarding the medical evidence," (Dkt. 14 at 10), fall flat.

With regards to hand use, the ALJ considered two opinions by treating physicians who cleared Plaintiff to return to work (with a ten-pound lifting restriction) and encouraged her to exercise and avoid bedrest. (Dkt. 12-7 at 114, R. 411 (Dr. Kurtz); (Dkt. 12-8 at 33, R. 493 (Dr. Sieber)). Finding these opinions persuasive either in part or in full, the ALJ confined Plaintiff to sedentary work,

which amounts to an adoption of the ten-pound lifting restriction. *See* 20 CFR §§ 404.1567(a), 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time"). The ALJ also limited Plaintiff's ability to use her hands (*i.e.*, only frequent handling, fingering, and gross and fine manipulating). In arriving at this conclusion, the ALJ discussed the medical opinions and cited medical records relating to Plaintiff's dexterity. (*E.g.*, Dkt. 12-2 at 21, R. 20 ("full range of motion of the elbow but limited range of motion of the hands and wrist"; "grip strength is good, with right greater than left"; "able to hold and use a pen; open a doorknob; pinch and pick up a paper clip from the floor; make a closed first; and oppose thumb to digits in tandem without difficulty"); *id.* at 22, R. 21 ("While she does have EMG abnormalities, I note that various strength and/or grip assessments are predominately within normal limits. Based on the limited abnormalities the restriction to frequent use is supported.")). Otherwise, the ALJ concluded Plaintiff had not carried her burden to prove a more-restrictive RFC with respect to hand use. (Dkt. 12-2 at 23-24, R. 22-23). Contrary to Plaintiff's assertion, this conclusion is adequately supported by the evidence in front of, and cited by, the ALJ, and the Court will not commit error by second guessing the ALJ's weighing of that evidence. *See Lopez*, 336 F.3d 539 (7th Cir. 2003) (reviewing court reversed ALJ's finding only when findings are unsupported by substantial evidence or contain legal error). Although Plaintiff repeatedly claims that the ALJ improperly played doctor and performed lay interpretations of medical evidence, she fails to demonstrate *what*

medical evidence was impermissibly interpreted or what medical evidence supported the more restrictive limitations that she seeks.

Plaintiff next argues the ALJ's conclusion regarding her unlimited ability to sit was unsupported by the evidence and constituted nothing more than an "improper medical determination." (Dkt. 14 at 13-14). According to Plaintiff, once the ALJ rejected the consultive opinions of Dr. Corcoran and Dr. Sands (limiting Plaintiff to six hours of sitting in an eight-hour workday), the ALJ erred in filling the gap "with [her] own opinion." (*Id.* (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010)). The ALJ allegedly compounded this error by failing to consider Plaintiff's obesity in combination with other impairments when formulating a sitting limitation. (*Id.*).

The Commissioner responds that, in fact, it is Plaintiff who asks this Court to "reweigh the evidence" and "come to a different conclusion." (Dkt. 20 at 10). According to the Commissioner, no medical professional opined Plaintiff could not work; nor does the record contain medical opinions imposing stricter limitations than those in the RFC. (*Id.*). The Court agrees with the Commissioner. When the RFC is formulated, the claimant bears the burden of proof. *Briscoe*, 425 F.3d at 352. As discussed above, the evidence put before the ALJ consisted of Plaintiff's testimony, the medical records, and the opinions of Drs. Kurtz, Corcoran, Sands, and Sieber. (Dkt. 12-2 at 22-24, R. 21-23). Dr. Kurtz recommended exercise, not bedrest. (*Id.* at 22-23, R. 21-22). Dr. Siebert cleared Plaintiff to return to work with no restriction on Plaintiff's ability to sit. (*Id.*). With respect to the opinions of Dr.

Corcoran and Dr. Sands, Plaintiff asserts that the ALJ improperly rejected their opinions that she was "limited to no more than six hours of sitting in a workday" and improperly concluded that "Plaintiff was unlimited in her ability to sit." (Dkt. 14 at 13). This claim stretches too far. It is true that the ALJ found the state agency consultants' opinions non-persuasive (in part because their opinions failed to "adequately consider the combined effects of the claimant's impairments"), (Dkt. 12-2 at 23, R. 22), but the ALJ then proceeded to conclude that Plaintiff was limited to sedentary work. Sedentary work does not necessarily mean an individual is "unlimited" in his or her ability to sit. Rather, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5: *see also* 20 C.F.R. § 404.1567(a) ("Jobs are sedentary if walking and standing are required occasionally."). Viewed in this light, it's not even clear that the allegedly improperly-rejected opinions of Drs. Corcoran and Sands contradict the ALJ's ultimate conclusion regarding Plaintiff's postural abilities. Lastly, as discussed in more detail below, the ALJ did not find Plaintiff's testimony regarding her edema and postural difficulties persuasive in light of this other evidence. In sum, Plaintiff failed to carry her burden of proving a more restrictive RFC is appropriate here; the Court finds no error in either the ALJ's review of the medical records and opinions or in her ultimate RFC determination.

To the extent Plaintiff argues the challenged decisions by the ALJ amount to "playing doctor," (Dkt. 14 at 13-14; Dkt. 22 at 8), not so. Plaintiff cites two cases as

being emblematic of the ALJ's error. (Dkt. 14 at 13-14). However, these cases can be distinguished from the facts here.

One case cited by Plaintiff concerned an ALJ who relied on outdated opinions of consulting physicians over more recent medical evidence which indicated that the claimant's condition was deteriorating. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ erred in her "uncritical acceptance of the consulting physicians' conclusions" when they "had not been shown the report of the 2010 MRI" which "show[ed] a worsening" of plaintiff's condition). Here, the ALJ did exactly the opposite. She did not credit the consulting physicians because more recent evidence suggested a more restrictive RFC was appropriate, and she formulated an RFC to match the ten-pound lifting limit imposed by Dr. Seibert. (Dkt. 12-2 at 23, R. 22). This resulted in an RFC of "sedentary work," which is more restrictive than what the consultative examiners opined Plaintiff could do. (*Id.*).

In the other case Plaintiff relies on, the ALJ did not credit a later-in-time, disabling opinion, relying instead on an earlier opinion with no functional assessment at all. *Suide,* 371 F. App'x 689-90. And, as in *Goins*, the condition of the claimant in *Suide* had declined between the opinion relied on by the ALJ and the ALJ's decision. *Id*. Again, that is not the case here. There is no disabling opinion and the most recent opinion available clears Plaintiff to return to work, with a lifting limit. (Dkt. 12-8 at 33, R. 493). The ALJ did not play doctor here but deferred to the conclusions of the doctors treating Plaintiff.

## 2.    Obesity

Plaintiff next argues that the ALJ failed to properly consider her obesity in combination with other impairments. (Dkt. 14 at 14-15). "[R]eversal and remand are warranted," she asserts, because the ALJ "seems to impliedly admit that Plaintiff's obesity does, in fact, contribute [to] her pain" but only mentioned it sparingly. (*Id.*). But a review of the ALJ's decision reveals this argument to be unpersuasive. Although the ALJ may not repeat the term "obesity" throughout her opinion, her analysis makes it clear that she gave it adequate consideration. In addition to explicitly acknowledging the potential for it to impact Plaintiff's other impairments, (Dkt. 12-2 at 19, R. 18), the ALJ's decision shows ample consideration of Plaintiff's pain, reduced range of motion, and postural limitations. (*See, e.g., id.* at 21-22, R. 20-21). Because the ALJ's decision shows ample consideration of the impacts of Plaintiff's obesity, the undersigned will not second guess the ALJ's conclusion that it, alone or in combination with other impairments, did not warrant additional limitations. (*Id.* at 19, R. 18).

## 3.    Psychological Impairments

Last, Plaintiff argues the ALJ conducted a "legally insufficient" evaluation of her psychological impairments, by failing to consider her statements regarding her symptoms and the combined effects of Plaintiff's physical and psychological impairments. (Dkt. 14 at 15). As noted above, the ALJ found Plaintiff's psychological impairments (*i.e.*, depression and anxiety) to be "non-severe" and found mild limitations in the areas of concentrating, persisting or maintaining pace,

and adapting or managing oneself. (Dkt. 12-2 at 15-17, R. 14-16). The ALJ
concluded that Plaintiff had no "measurable loss of function" that required mental
limitations in the RFC. (Dkt. 12-2 at 17, R. 16). The ALJ reached these conclusions
after considering Plaintiff's statements, medical records, and the consultative
phycological expert reports (which the ALJ found persuasive). (*Id*. at 15-16, 23; R.
14-15, 22). The mental health exams reflected Plaintiff's history of mental health
issues and reports of "lowered motivation; mixed energy; limited socializing; and
sleep disturbance." (Dkt. 12-2 at 15, R. 14). As the ALJ summarized, Plaintiff's
mental health records further showed Plaintiff as presenting with a "depressed
mood," "blunt" and "subdued" affect. (*Id*.). Plaintiff's assertion that "the ALJ offered
no analysis whatsoever of the *combined* effects of Plaintiff's mental and physical
impairments," (Dkt. 14 at 16 (emphasis in original)), is incorrect. The ALJ explicitly
acknowledged the fact that Plaintiff "attributed [her mental health] issues to her
physical pain," (Dkt. 12-2 at 15, R. 14; *see also id*. at 23, R. 22), but ultimately
concluded that they did not impact her ability to work. (*Id*. at 16, R. 15). The ALJ
declined to include any mental ability limitations in the RFC because Plaintiff's
psychological limitations were so slight as to "not cause any measurable loss of
function in the mental abilities." (*Id*. at 17, R. 16; *see also id*. at 15, R. 14 (Plaintiff
is generally "alert, oriented, and cooperative" and has "normal speech, thoughts,
memory, attention, concentration, judgment, and insight")). Plaintiff may not like
this conclusion, but it is soundly grounded in the available record, and the Court
does not have a basis to second-guess the ALJ here. *See Elder*, 529 F.3d at 413 (the

17

ALJ's decision must stand if reasonably supported by the evidence, even if reasonable minds could differ about the conclusions reached).

In sum, despite the alleged errors identified by Plaintiff in challenging the ALJ's RFC, the Court finds that substantial evidence supports the RFC. The Court can trace the line drawn by the ALJ between the evidence and her conclusion. As such, the Court declines to reverse on this ground.

### B.   Subjective Symptom Analysis

Plaintiff next attacks the ALJ's subjective symptom analysis, alleging it runs afoul of SSR 16-3p. (Dkt. 14 at 18-24). The ALJ evaluated Plaintiff's subjective symptoms pursuant to 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. (Dkt. 12-2 at 20-24, R. 19-23). "In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Karen A. R. v. Saul*, No. 1:18-cv-2024-DLP-SEB, 2019 WL 3369283, at *5 (S.D. Ind. July 26, 2019). SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4.

A court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong." *Burmester*, 920 F.3d at 510 (citation

18

omitted). To satisfy this standard, the ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion," *Villano*, 556 F.3d at 562. Without this discussion, the Court is unable to determine whether the ALJ "reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (quoting *McKinzy v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)); *see also* SSR 16-3p, at *9. An ALJ's evaluation is "patently wrong" and subject to remand when the ALJ's finding lacks any explanation or support. *Murphy*, 759 F.3d at 816; *Elder*, 529 F.3d at 413-14; *Cassandra S. v. Berryhill*, No. 1:18-cv-0328-JRS-MPB, 2019 WL 1055097, at *5 (S.D. Ind. Mar. 6, 2019).

At step two of the Rule 16-3 analysis, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individual's own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other

circumstances." SSR 16-3p, 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9; *see also* SSR 19-4p, 2019 WL 4169635.

With these principles in mind, the Court now turns to the ALJ's subjective symptom analysis in this case. Here, the ALJ concluded that Plaintiff's subjective symptom statements in general were not entirely consistent with the record. (Dkt. 12-2 at 21, R. 20). From the discussion, the Court can glean two reasons the ALJ gave to support her finding of inconsistency: (1) routine and conservative treatment, with few in-person visits and no referrals to specialists; and, (2) the treatment's general success in controlling symptoms, as evidenced by relatively normal examinations. (*Id.*).

In alleging the ALJ violated SSR 16-3p, Plaintiff presents a grab-bag of allegations. First, Plaintiff argues the ALJ erred in considering her treatments as routine, conservative, and effective. (Dkt. 14 at 19). She critiques the ALJ's allegedly "lay reading" of the medical evidence. (*Id.* at 17). Furthermore, Plaintiff alleges the ALJ ignored reports that her hands had reduced grip strength. (*Id.* at 20). Next, Plaintiff points to the ALJ's summary of her daily activity and efforts to care for her daughter as proof the ALJ violated SSR 16-3p (*Id.* at 22). Here, the alleged fault is in correlating efforts to feed and care for oneself and one's family as

equivalent to what Plaintiff could do in the workplace, while also overlooking familial assistance with these tasks. (*Id.*). Taken together, Plaintiff argues, the ALJ's reasons for disregarding her statements about her symptoms were all improper, leaving "no other rationale for rejecting Plaintiff's statements." (*Id.*).

But Plaintiff does not fairly assess the record here. First, the ALJ did not ignore reports of Plaintiff's reduced grip strength, but correctly noted that Plaintiff had greater weakness in her left hand than her right, while remaining overall "within normal limits." (*See* Dkt. 12-2 at 19, 21-22, R. 18, 20-21). Plaintiff's citations to the record do not contradict these conclusions—Plaintiff cites to a note, repeated five times in the record, that read only "noted grip strength weakness R>L". (Dkt. 14 at 20 *citing* R. 301, 305, 571, 575, 579). Nor was the ALJ's conclusion that Plaintiff's treatment was "generally successful" in controlling symptoms inconsistent with the record. As noted, Plaintiff had numerous exams that showed "full strength, sensation, and reflexes", along with normal balance, (Dkt. 12-2 at 21, R. 20), and her own physicians cleared her to return to work with limited restrictions, (Dkt. 12-7 at 114, R. 411; Dkt. 12-8 at 33, R. 493). To the extent that the ALJ did not identify more aggressive treatments that would have been available, (*see* Dkt. 14 at 18-19), any error on this front is not fatal to the ALJ's analysis. The Court can still easily trace the path of the ALJ's reasoning in evaluating Plaintiff's symptoms. With regards to the ALJ's discussion of Plaintiff's daily activities, it is true that the ALJ did not explicitly mention Plaintiff's statements that her daughter assisted her with chores. (*Id.*  at 21). But a careful

reading of the ALJ's opinion shows that she did not reach too far in her summary of Plaintiff's abilities on this front: "She said she is able to prepare meals and perform household chores . . . *once in a while*." (Dkt. 12-2 at 22, R. 21 (emphasis added)). To the extent the ALJ did not explain "why those activities were inconsistent" with her subjective allegations, the Court does not need further explanation to follow the ALJ's reasoning here.

The Court only reverses symptom analysis under SSR 16-3p when the analysis is "patently wrong," which requires a complete lack of "explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (citing *Murphy*, 759 F.3d at 816). The ALJ provided explanation and support such that reversal is inappropriate here.

## V.    Conclusion

For the reasons detailed herein, the Court **AFFIRMS** the ALJ's decision denying Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.


Date:  07/25/2024

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana



Distribution:

All ECF-registered counsel of record via email generated by the Court's ECF system